UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

LAURIE WELLS,

        Plaintiff,                       Civil No. 04-1328-HA

        v.                               OPINION AND ORDER

JO ANNE B. BARNHART,
Commissioner of Social Security,

        Defendant.

---

Alan Stuart Graf
Alan Stuart Graf, P.C.
1020 SW Taylor Street, Ste. 230
Portland OR 97205
    Attorney for Plaintiff

Karin J. Immergut
United States Attorney
Craig J. Casey
Assistant United States Attorney
1000 S.W. Third Avenue, Suite 600
Portland, Oregon 97204

Leisa A. Wolf

Special Assistant United States Attorney
Social Security Administration
701 Fifth Avenue, Suite 2900 M/S 901
Seattle, Washington 98104
	Attorneys for Defendant

HAGGERTY, Chief Judge:

Plaintiff brings this action pursuant to § 205(g) of the Social Security Act (SSA), as amended, 42 U.S.C. §§ 405(g), 1383©)(3), seeking judicial review of the final decision of the Commissioner of the Social Security Administration denying her applications for disability insurance benefits (DIB) under Title II and supplemental security income (SSI) under Title XVI. For the reasons provided below, the court concludes that the Commissioner's decision is not based on proper legal standards and is not supported by substantial evidence. Accordingly, the decision of the Commissioner is reversed, and this matter is remanded for further proceedings.

## ADMINISTRATIVE HISTORY

Plaintiff filed for DIB and SSI on August 8, 2001. Administrative Record 56–58.[1] Plaintiff alleged that she became disabled on July 1, 2001 due to chronic pain from sciatica, osteoarthritis, scoliosis, and degenerative disc disease. AR 101. In addition, she complained of asthma, reactive airway disease, and fatigue. *Id.* After plaintiff's application was denied initially, AR 372, and upon reconsideration, AR 377, she requested a hearing. AR 13. Two hearings were held before an administrative law judge (ALJ), on May 7 and October 9, 2003. AR 380–461. Plaintiff testified at both hearings, and a vocational expert (VE), Scott Stipe, testified at the second. The ALJ issued a written decision on March 12,

---

[1] All references to the Administrative Record will be designated by "AR" followed by the page number.

2004 finding plaintiff not disabled. AR 14–25. On July 28, 2004, the Appeals Council denied plaintiff's request for review, AR 7–9, making the ALJ's decision the final decision of the Commissioner. *See* C.F.R. §§ 416.1481, 422.210. Plaintiff filed her complaint for judicial review in this court on September 17, 2004.

**STANDARDS**

A claimant is disabled if he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A). A person can be disabled only if his or her impairment is "of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ." 42 U.S.C. § 423(d)(2)(A).

The initial burden of proof rests upon the claimant to establish his or her disability. *Roberts v. Shalala*, 66 F.3d 179, 182 (9th Cir. 1995). The Commissioner bears the burden of developing the record. 20 C.F.R. §§ 404.1512(d), 416.912(d); *DeLorme v. Sullivan*, 924 F.2d 841, 849 (9th Cir. 1991). The Commissioner has established a five-step sequential evaluation process for determining if a person is eligible for disability benefits. 20 C.F.R. §§ 404.1520, 416.920; *Quang Van Han v. Bowen,* 882 F.2d 1453, 1456 (9th Cir. 1988). If a determination that the claimant is or is not disabled can be made at any step, further review is unnecessary. 20 C.F.R. § 404.1520(a)(4). Below is a summary of the five steps:

Step One. The Commissioner determines whether the claimant is engaged in substantial gainful activity. If so, the claimant is not disabled; if not, the Commissioner proceeds to step two. 20 C.F.R. § 404.1520(a)–(b).

Step Two. The Commissioner determines whether the claimant has a severe mental

3 – OPINION AND ORDER

or physical impairment. If so, the Commissioner proceeds to step three; if not, the claimant is not disabled. 20 C.F.R. § 404.1520©).

Step Three. Disability cannot be based solely on a severe impairment; therefore, the Commissioner next determines whether the claimant's impairment "meets or equals" one or more of the impairments listed in the SSA regulations. 20 C.F.R. pt. 404, subpt. P, app. 1. If so, the claimant is disabled; if not, the Commissioner proceeds to step four. 20 C.F.R. § 404.1520(d).

Step Four. The Commissioner determines whether the claimant is able to perform work he or she has done in the past. This requires the ALJ to examine the claimant's residual functional capacity (RFC) and the physical and mental demands of the claimant's past relevant work. *Lewis v. Barnhart*, 281 F.3d 1081, 1083 (9th Cir. 2002). If the claimant is able to perform past relevant work, the claimant is not disabled; if the claimant demonstrates that he or she is not able to perform past relevant work, the Commissioner proceeds to step five. 20 C.F.R. § 416.920(e)–(f).

Step Five. The Commissioner determines whether the claimant is able to do any other work. If not, the claimant is disabled. If the Commissioner finds the claimant is able to do other work, the Commissioner must show that a significant number of jobs in the national economy exist that the claimant can do. *Gomez v. Chater*, 74 F.3d 967, 970 (9th Cir. 1996). While the claimant bears the burden of proof at steps one through four, the burden shifts to the Commissioner at step five. *Id.* The Commissioner may satisfy this burden through the testimony of a vocational expert or by reference to the Medical-Vocational Guidelines, 20 C.F.R. pt. 404, subpt. P, app. 2. If the Commissioner demonstrates that a significant number of jobs exist in the national economy that claimant can do, the claimant is not disabled; if the Commissioner does not meet this burden, the

4 – OPINION AND ORDER

claimant is disabled. 20 C.F.R. § 404.1520(g).

The district court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record as a whole. 42 U.S.C. § 405(g); *Tackett v. Apfel,* 180 F.3d 1094, 1097 (9th Cir. 1999); *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). "Substantial evidence means more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Andrews*, 53 F.3d at 1039. The court must weigh all of the evidence, whether it supports or detracts from the Commissioner's decision. *Martinez v. Heckler*, 807 F.2d 771, 772 (9th Cir. 1986). However, the Commissioner, not the reviewing court, must resolve conflicts in the evidence, and the Commissioner's decision must be upheld even if the evidence would support either outcome. *Reddick v. Chater*, 157 F.3d 715, 720–21 (9th Cir. 1998). Finally, even if substantial evidence supports the Commissioner's decision, it must be set aside if the Commissioner did not apply the proper legal standards in weighing the evidence and making the decision. *Id.*

## FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff was forty-four years-old on the date of her alleged onset of disability. AR 24. She has a high school education and two years of college with past relevant work experience as an administrative support technician, residential counselor, in-home caregiver, and teacher. AR 86. Plaintiff worked for approximately three years at an after school learning center and was working there part time at the time of the initial hearing. AR 385, 437. She stopped working shortly after the first hearing. AR 437.

In her application for benefits, plaintiff complained of: chronic pain from sciatica, osteoarthritis, scoliosis, and degenerative disc disease, as well as asthma, reactive airway

5 – OPINION AND ORDER

disease, and fatigue. AR 101. Medical records also contain evidence of pleurisy, hypothyroidism, menometrorrhagia, anemia, dysthymia, adjustment disorder, and undifferentiated somatoform disorder.[2] AR 154, 177, 222, 282, 334. In 1991, plaintiff was struck by a horse, resulting in a compression fracture of her L1 vertebra. AR 361. Plaintiff has a leg length discrepancy, for which she uses a prosthetic heel lift. AR 189. In 2001, she was prescribed a cane for painful gait due to sciatica. AR 165. At the hearings before the ALJ, plaintiff testified that she was exhausted and was experiencing increasing pain in her neck and back. AR 389, 437–38.

At the first hearing, the ALJ requested additional consultative medical documentation of plaintiff's physical and mental impairments. Plaintiff then underwent examinations with three consultative physicians. The results of all of these examinations were before the ALJ at the second hearing.

On June 9, 2003, Dr. Tatsuro Ogisu performed a consultative orthopedic examination and reviewed plaintiff's medical records. AR 264–71. Dr. Ogisu diagnosed plaintiff with chronic back pain, tevoscoliosis, and degenerative disc disease in various areas of the cervical, thoracic, and lumbar vertebrae, and one region of "moderately severe disc space narrowing." AR 266. He observed her leg length discrepancy and the compression fracture she sustained in 1991. *Id.* He found "wedging" of the T4 vertebra, but felt that this did not likely contribute to her back pain. *Id.* He doubted the presence of sciatica, and found no objective support for radiculopathy, a disorder of the spinal nerve roots. *Id.*

---

[2] According to the *Diagnostic and Statistical Manual of Mental Disorders*, *4th Edition*, undifferentiated somatoform disorder is characterized by one or more physical complaints, persisting for six months or longer, which cannot be fully explained by, or are grossly in excess of what would be expected from the patient's history, physical examination, or laboratory findings. DSM-IV-TR, at 490.

Nonetheless, he stated that her limitations combined to cause mechanical back and neck pain, which would require "more frequent positional relief than afforded by normal breaks" provided in the workplace. *Id.* at 269. Evaluating plaintiff's exertional limitations, Dr. Ogisu stated that she could occasionally lift twenty pounds, "several times, non-repetitively," and less than ten pounds frequently.[3]

On June 18, 2003, Cheryl Brischetto, Ph.D., performed a neuropsychological screening at the referral of Oregon Disability Determination Services (DDS). AR 272–300. Dr. Brischetto found that plaintiff had an average IQ and an overall average ability profile. AR 280. Plaintiff exhibited moderate impairment in memory and detail-oriented functioning. AR 287. Dr. Brischetto felt that plaintiff's efforts in the testing were good and produced a valid profile. AR 277–78. She also noted that plaintiff exhibited a fair amount of pain during the four-and-a-half hours of testing and that she was invited to get up and move around as needed, which she did. AR 277.

Dr. Brischetto diagnosed plaintiff with dysthymia, adjustment disorder with mixed anxiety and depression (chronic), rule-out undifferentiated somatoform disorder, and rule-out delusional disorder (somatic and persecutory type). AR 282. Dr. Brischetto stated that a somatoform disorder may cause plaintiff to be "very concerned about physical functioning when there is no clear organic pathology." AR 280. She noted paranoid and histrionic features, and observed some evidence of schizophrenic process, but eventually concluded that plaintiff's symptoms were not consistent with schizophrenia. AR 280–82. Dr. Brischetto noted that plaintiff was very sensitive, perhaps oversensitive, to being controlled by others, and thus stated that plaintiff had moderate limitations interacting appropriately

---

[3] "Occasionally" means occurring from very little up to one-third of the time, while "frequently" means occurring from one-third to two-thirds of the time. SSR 83-10.

with supervisors, co-workers, and the public. AR 288.

Dr. Mark Yerby, a neurologist, saw plaintiff on July 24, 2003. AR 335. Dr. Yerby ordered blood tests and an MRI of her lumbar spine, and after reviewing these results, saw plaintiff again on August 25, 2003. AR 334–59. Dr. Yerby made similar observations to those of Dr. Ogisu, finding the 1991 compression fracture, leg length discrepancy, mild scoliosis, and some degeneration in her cervical and lumbar spines. AR 341, 347. Dr. Yerby observed:

> On neurological examination there is little in the way of objective findings and her motor examination demonstrated a giveaway quality to her weakness with no true focal weakness demonstrated when testing is repeated.
> . . .
>
> Her manner and pressured speech and poor historical organization may be signs of a cognitive deficit. In order to put the organic matters to rest I feel we should thoroughly evaluate treatable causes of her symptoms.

AR 341. In a letter to plaintiff's attorney, Dr. Yerby stated that, while plaintiff's degenerative joint disease and chronic pain did limit:

> her ability to remain comfortably in a stationary position (she will require frequent changes of position), it is not this alone which disables her. She appears to suffer from a somatoform disorder in which her reaction to her symptoms is such that she is unable to function in a normal fashion. This is not to stay [sic] that she is exaggerating or in any way misrepresenting her symptoms, but that her psychological condition is such that she is unable to function with the degenerative joint disease she currently has.

AR 334.

## THE COMMISSIONER'S DECISION

At step one, the ALJ determined that plaintiff's part time work was not significant gainful activity. AR 18. At step two, the ALJ held that plaintiff had the severe, medically determinable impairments of moderate degenerative disc disease, scoliosis, dysthymia, and adjustment disorder with mixed anxiety and depression. AR 20. At step three, the ALJ

8 – OPINION AND ORDER

found that plaintiff's impairments caused mild restrictions in activities of daily living, moderate difficulties in maintaining social functioning, and moderate difficulties in maintaining concentration, persistence, or pace. AR 21. Plaintiff had experienced no episodes of decompensation. *Id.* Therefore, her impairments did not meet or equal any of the listed impairments. *Id.* At step four, the ALJ concluded that plaintiff would be unable to perform her past relevant work. AR 23.

Thus, the ALJ faced the burden at step five of showing that a significant number of jobs in the national economy existed that plaintiff could do. *See* 20 C.F.R. § 416.920(e)–(f); *Gomez,* 74 F.3d at 970. The ALJ found plaintiff less than fully credible in her testimony as to the disabling severity of her symptoms. AR 23. Based on the limitations found by Drs. Ogisu and Brischetto, the ALJ found that plaintiff retained the RFC to perform a modified range of light work. AR 23. The ALJ adopted vocational expert testimony that plaintiff could perform jobs existing in significant numbers in the national economy, such as small assembler, electrical (packaging/cleaning) worker, and hand packager. AR 24. The ALJ thus concluded that plaintiff was not disabled. AR 24.

## ANALYSIS

Plaintiff asserts that the ALJ erred by: (1) improperly rejecting plaintiff's subjective complaints; (2) improperly analyzing the medical evidence; and (3) improperly adopting the testimony of the VE. Because this case turns on the ALJ's evaluation of plaintiff's credibility, the medical evidence and VE testimony is analyzed with reference to the ALJ's credibility determination.

### A. The ALJ's rejection of plaintiff's testimony

In assessing a claimant's credibility an ALJ may consider: (1) ordinary techniques of credibility evaluation, such as the claimant's reputation for truthfulness, prior inconsistent

9 – OPINION AND ORDER

statements regarding the symptoms, and other less than candid statements; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; (3) the claimant's daily activities; (4) the objective medical evidence; (5) the location, duration, frequency, and intensity of symptoms; (6) precipitating and aggravating factors; (7) the type, dosage, effectiveness, and side effects of any medication; and (8) treatment other than medication. *Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir 1996). While the ALJ is ultimately responsible for determining credibility, resolving conflicts in medical evidence, and resolving ambiguities, the ALJ's decision must ultimately find specific, cogent support in the record. *Reddick*, 157 F.3d at 722. Once a claimant produces medical evidence of an underlying impairment, the ALJ may not discredit her testimony as to the severity of symptoms merely because they are unsupported by objective medical evidence. *Bunnell v. Sullivan,* 947 F.2d 341, 343 (9th Cir.1991) (*en banc*). In fact, absent affirmative evidence of malingering, the ALJ's reasons for rejecting her testimony must be "clear and convincing." *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995). "General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Id.*

Here, the ALJ acknowledged that plaintiff had the medical diagnoses of chronic pain, L1 compression fracture, minor osteoarthritis, scoliosis with minor wedging, spinal degeneration, and leg-length discrepancy. AR 22. However, the ALJ stated that these provided no objective support for plaintiff's alleged limitations. *Id.* Clearly, a complete absence of objective medical support for a claimant's symptoms may support an adverse credibility determination. *See Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002); 20 C.F.R. § 404.1529©)(2). In this situation, however, plaintiff offered a medically determinable basis for her back pain. Thus, the ALJ was required to produce clear and

10 – OPINION AND ORDER

convincing evidence in support of his credibility determination, or substantial evidence that plaintiff was malingering. *Lester*, 81 F.3d at 834.

    1.    <u>Inconsistencies in Plaintiff's Testimony</u>

In discounting plaintiff's allegations of the severity of her symptoms, the ALJ observed two inconsistencies between her testimony and the record. AR 23. First, the ALJ found plaintiff inconsistent in her testimony regarding her use of a cane. Plaintiff appeared with a cane at the second hearing, stating that she had used it for a couple of years. AR 439–40. Yet, plaintiff had not brought her cane to the first hearing. AR 439. The ALJ further noted that crutches were temporarily prescribed only after plaintiff requested them, but that no evidence showed a *cane* had been prescribed. AR 23. The ALJ found these circumstances to be inconsistent with her testimony.

Contrary to the ALJ's assertion, the record shows issuance of a cane two years before the second hearing, for "painful gait from sciatica." AR 165. The fact that plaintiff brought the cane to one hearing but not to the other is susceptible to an infinite variety of inferences; the ALJ provided no clear basis for his inference of malingering. The ALJ also failed to offer an explanation as to why plaintiff's request for crutches would suggest that her pain is not as disabling as alleged. Certainly, it is not unreasonable for a person experiencing severe pain to request crutches.

The second inconsistency the ALJ observed was between plaintiff's daily activities, particularly her part time work for much of the period of claimed disability, and her allegations of disability. AR 23. The ALJ considered plaintiff's ability to cope with work-related stresses as probative of an ability to work full time. *See* 20 C.F.R. § 404.1571, 416.971.

Work done by a claimant during a claimed period of disability, even if not

11 – OPINION AND ORDER

substantial gainful activity, may indicate an ability to do more work than claimed. *See* 20 C.F.R. §§ 404.1571, 416.971 (stating that work done during a claimed period of disability, even if not substantial gainful activity, may be a valid indication of a claimant's ability to do more work than claimed). However, only where a claimant's work activities are inconsistent with her claimed limitations do they form a valid basis for discounting credibility. *Reddick*, 157 F.3d at 722. The ALJ made no finding that plaintiff's work was inconsistent with her disability claim. In fact, plaintiff experienced great difficulty meeting the physical demands of even fifteen hours of work per week. AR 166–67. In the balance of her time, plaintiff spent much time resting and attending appointments with doctors. AR 409.

Further, observing that plaintiff received welfare benefits, the ALJ inferred that her "motivation to work is undoubtedly tied to having to work in order to receive welfare benefits . . . ." AR 23, 407. Thus, merely on the basis that plaintiff was in a difficult financial condition, the ALJ concluded that plaintiff was motivated by secondary gain, which thus impugned her credibility. The ALJ offered no support for this conclusion, other than observing that continued receipt of welfare was tied to working and that plaintiff had a hard time making ends meet. It is worth observing that financial need is one of the most characteristic motivations for seeking work; the desire to support oneself with employment is not germane to plaintiff's credibility. *See Reddick*, 157 F.3d at 722 ("disability claimants should not be penalized for attempting to lead normal lives in the face of their limitations").

Moreover, no evidence shows that plaintiff has a disinclination to work. In *Thomas,* 278 F.3d at 959, the claimant had an extremely poor work history, with years of unemployment between jobs even before claiming disability. The court approved of the ALJ's observation that the claimant had shown "little propensity to work in her lifetime" and agreed that it was one part of a valid rejection of plaintiff's claimed inability to work. *Id.* In

12 – OPINION AND ORDER

contrast, plaintiff's work history is much stronger. She had continuous earnings before fracturing her vertebra in 1991 and several years of sporadic earnings following that incident, which led to a rebound in earnings from 1998 until 2001, when she claimed disability. Plaintiff testified that she has a very strong work ethic, and no evidence shows otherwise. AR 409–11.

    2.    <u>Medical opinions of Drs. Yerby and Brischetto</u>

In evaluating the medical evidence with reference to plaintiff's credibility, the ALJ's analysis proceeded in two steps. First, the ALJ found that no physical organic disorder provided an objective basis for disabling pain. Then, assessing the medical evidence of mental impairments, the ALJ concluded that the evidence did not establish the existence of a disabling mental impairment.

The ALJ found "there is no objective medical evidence to support the claimant's allegations of disabling limitations." AR 22. The ALJ noted that in 2001, plaintiff's primary care physician had merely prescribed temporary light work, and that no treating physician had opined that she was disabled.[4] *See* AR 22; AR 161. While medical evidence is a valid basis upon which to evaluate credibility, 20 C.F.R. § 1529©)(2), plaintiff nonetheless did offer evidence of a medical impairment that "could reasonably be expected" to cause her back pain. *Smolen*, 80 F.3d at 1282 (emphasis omitted). The ALJ recognized this by concluding that her spinal disorders were severe impairments. Therefore, the ALJ could not properly discredit plaintiff's testimony merely because her pain allegations could not be

---

[4] While the ALJ is correct that no treating physician stated explicitly that plaintiff was disabled, Dr. Yerby, a consultative examining physician, stated that plaintiff's overall condition did "disable[] her" and left her "unable to function." AR 334. Thus, the record is not without reference by an examining physician that plaintiff's impairments are disabling.

13 – OPINION AND ORDER

explained by objective medical evidence; instead, he had to provide specific, clear and convincing reasons for doing so.  *See Doddrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993).

The ALJ next found that medical evidence did not establish a disabling mental impairment.  Dr. Yerby stated that plaintiff "appears to suffer from a somatoform disorder in which her reaction to her symptoms is such that she is unable to function in a normal fashion."  AR 224.  The ALJ rejected this opinion because Dr. Yerby "was a consultative, not a treating physician, and he is a neurologist, not a psychiatrist.  Therefore, he provided an opinion outside of his field of expertise."  AR 22.

The ALJ then addressed Dr. Brischetto's findings.  Dr. Brischetto observed elevations on a diagnostic scale that measures schizophrenic processes.  AR 280.  After tentatively concluding that plaintiff's functioning was inconsistent with paranoid schizophrenia, Dr. Brischetto provided her impression of "rule out undifferentiated somatoform disorder."  AR 281–82.  The ALJ did not address this diagnosis.  This failure is notable because, when Dr. Yerby provided the same impression, the ALJ rejected it as beyond the scope of his expertise.  AR 22.  Clearly, such a diagnosis is not beyond the expertise of Dr. Brischetto, a licensed psychologist.

Again, plaintiff was not required to show that "her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom."  *Smolen*, 80 F.3d at 1282 (citing *Orteza v. Shalala*, 50 F.3d 748, 749–50 (9th Cir. 1994).  Here, medical evidence of a somatoform disorder helps buttress plaintiff's credibility.  While a definitive diagnosis of a somatoform disorder is not necessary for plaintiff to establish disability due to pain symptoms, somatization does help explain in medical terms why plaintiff's symptoms exceed her apparent physical impairments.  In fact, Dr. Yerby stated that he was not saying

14 – OPINION AND ORDER

"that she is exaggerating or in any way misrepresenting her symptoms, but that her psychological condition is such that she is unable to function with the degenerative joint disease she currently has." AR 334.

While the ALJ could permissibly reject somatoform disorder as a separately disabling impairment on the basis that it was diagnosed by Dr. Yerby, a consultative physician, plaintiff did not make such a claim, nor did she need such a diagnosis to prove disability. It is the combination of plaintiff's impairments considered together that premise a disability determination. *Smolen*, 80 F.3d at 1283. The medical evidence of severe back injury capable of causing back pain is sufficient to premise disability; plaintiff's apparent tendencies toward somatization merely offer an explanation as to why she experiences such severe symptoms.

Thus, insofar as the ALJ required plaintiff to prove a somatoform disorder as a basis for disability, the ALJ's analysis is based on legal error. The ALJ's evaluation of the medical evidence does not provide the clear and convincing evidence needed to reject plaintiff's allegations of disabling pain. And, as discussed earlier, the ALJ's conclusion that plaintiff's work activities and inconsistent use of a cane undermined her credibility is strained and inadequate. Because the ALJ's improper rejection of plaintiff's testimony was the premise of the VE's testimony, his reliance on it in his final determination of disability was improper. The decision of the Commissioner finding that plaintiff was not disabled must therefore be reversed.

**B. Remand for further proceedings or an award of benefits**

The court must now consider whether to remand for further proceedings or to remand for an award of benefits. This determination is within the discretion of the court and turns on the utility of further proceedings. *Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir.

15 – OPINION AND ORDER

2000).  Improperly rejected evidence should be credited and an immediate award of benefits directed where there are no outstanding issues that must be resolved before a determination of disability can be made and it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited.  *Id.*

Because the record does not clearly require a finding of disability and outstanding issues remain to be resolved, the court finds that remand for further proceedings is appropriate.  While the ALJ improperly discredited plaintiff, her credibility is not completely unassailable.  The ALJ noted without elaboration that plaintiff had been discharged from physical therapy twice due to non-compliance.  AR 19.  An unexplained or inadequately explained failure to follow a prescribed regimen of treatment capable or restoring a claimant's ability to work is a valid basis on which to evaluate the credibility of subjective symptom reporting.  *See* 20 C.F.R. § 404.1530.  The record suggests that plaintiff was intermittently compliant with physical therapy, but was ultimately discharged.  AR 146, 148, 230, 262.  On remand, the Commissioner should explore plaintiff's compliance with physical therapy.  Whether physical therapy is a course of treatment that could restore plaintiff's ability to work, particularly with her tendencies toward somatization, is worthy of exploration.  In addition, plaintiff's ability to manage her pain with medication should be explored

Further, the VE testimony does not clearly establish plaintiff's disability even if her testimony was credited as true.  The VE testified that missing one or two days of work per month would preclude competitive employment in jobs she remained capable of performing.  AR 443–45.  It is not clear that plaintiff's impairments would result in that degree of absenteeism.  Plaintiff estimated that she had missed fifteen to twenty days of work from her last job over three years due to her impairments, but that she had missed eight days in the

month preceding the first hearing, AR 418, which is somewhat less than one day per month. Additional VE testimony will be useful in determining whether competitive employment would be precluded by plaintiff's level of absenteeism.

Finally, because plaintiff's subjective pain symptoms are to some degree disproportionate with her physical symptoms, the Commissioner should further investigate plaintiff's mental impairments. Particularly, plaintiff's medically documented tendencies toward somatization and her continuing mental health treatment will be relevant on remand.

## **CONCLUSION**

Pursuant to 42 U.S.C. § 405(g), the decision of the Commissioner is REVERSED and REMANDED for further proceedings consistent with this opinion.

IT IS SO ORDERED.

DATED this __22___ day of July, 2005.

_____/s/Ancer L.Haggerty_____
Ancer L. Haggerty
United States District Judge